## PHILANDER C. HUGGINS

*v.*

## SIMEON RIDER.

1. TRUSTEE—*compensation of, at common law.* At common law, in the absence of contract, a trustee is entitled to no compensation for the management of the trust property. He may impose terms as the condition of his acceptance of the trust, and the person creating the trust may accede to the same or not, as he chooses. Where the trust is accepted without agreement as to compensation, the trustee may charge for all reasonable and proper expenses incurred in caring for and preserving the trust property or fund.

2. SAME—*contract to pay, whether inferred.* The mere fact that a trustee, in presenting his account for a preceding year or years, reserved a compensation for his services, there being no final settlement, and some of the *cestuis que trust* expressing a dissatisfaction with the charge, will not be sufficient from which to infer a contract to pay the trustee for his services, especially for services subsequently performed. Had they approved and allowed the charges, it would have amounted to an implied contract to pay the same compensation for future services.

3. In the absence of any agreement, express or implied, to pay trustees for their services, no compensation can be claimed from the *cestuis que trust*, or by one trustee from the other who has the funds in his hands.

4. SAME—*compensation inter se.* Where trustees have settled with their *cestuis que trust*, and are allowed compensation for their services in attending to the trust property, and making sales thereof, in the absence of an agreement between the trustees themselves, as to the division of the pay allowed them, the compensation should be apportioned among them upon the principle of a *quantum meruit*, so that each shall receive in proportion to the services actually rendered by him. One trustee has no right to claim for services performed by his co-trustee.

5. One trustee can not call upon a co-trustee to pay him for services rendered, until after a settlement is had with the *cestuis que trust*, and it is ascertained what trust funds are in the hands of the latter, even if there is an express agreement to divide the compensation between them.

APPEAL from the Circuit Court of Macoupin county; the Hon. CHARLES S. ZANE, Judge, presiding.

This was a bill in chancery, by Simeon Rider against Philander C. Huggins. The bill charges that Rider and Huggins were joint trustees for the sale and disposal of lands and

town lots on the line of the Terre Haute and Alton Railroad ; that Rider and Huggins charged their *cestuis que trust* for their services as such trustees five per cent on all moneys collected by them from the sale of lands and town lots, and also five per cent for selling the same. The bill also showed the making several accounts, in which these commissions were charged and reserved. and equally divided between the two ; and that on July 24, 1867, Rider and Huggins rendered another account, as before, showing $1366.60 due them for services, of which Rider was entitled to one half, $683.30; that of the above amount, Huggins had retained $1108.05, and Rider $258.55, leaving $424.75 due from Huggins to Rider, to make up his share of commissions. The defendant's answer denied that there was anything due from him to Rider on account of commissions, and that the company for whom they were acting had never, as yet, approved either of their accounts, and claimed that Rider ought to look to the company for his compensation, etc.

On the hearing, the court below decreed that Huggins pay Rider $424.75 and costs, from which decree the defendant appealed. The opinion of the court states all the other material facts.

Mr. SAMUEL S. GILBERT, and Mr. JOHN I. RINAKER, for the appellant.

Mr. LEVI DAVIS, for the appellee.

Mr. CHIEF JUSTICE WALKER delivered the opinion of the Court :

It appears that the parties to this suit, with a number of other persons, were the owners of certain lands along the line of the Terre Haute and Alton Railroad, the legal title to which was in the parties to this suit. Being desirous of laying the lands off into towns, and selling and disposing of the lots when platted, the owners entered into an agreement by which the parties litigant were constituted trustees to lay

off the towns, and to sell and dispose of the town lots and grounds as they should deem for the best interest of the company, or as a majority thereof or the survivors might direct. The agreement made no provision for compensation of the trustees. They accepted and entered upon the trust and the discharge of its duties.

In 1858 an account was rendered to the company, and they each charged $1500 for services in selling lots, making contracts, deeds, collecting money, etc. They made a statement of their accounts in 1864, in which they charged five per cent commissions on sales, and a like sum on moneys collected. In 1866, they rendered a similar account in which they charged like commissions; and when they rendered their account in 1867, appellee claimed one-half of the commissions, but appellant, having transacted the larger amount of the business, refused to divide the commissions received by him, and that refusal has caused this litigation.

It appears that on the rendition of all accounts previous to the last, the compensation retained had been equally divided between them. But when they settled between themselves in 1866, appellant resisted a division of the emoluments, as he had performed much the larger portion of the labor, but finally yielded, saying he would not divide his earnings in the future: It also appears that he sold, during the last year, more than double the value of property sold by appellee.

On a hearing the court below decreed that appellant, of the commissions he received, pay to appellee $424.75, so as to make them equal in the receipts of commissions. Defendant appeals from the decree, and asks its reversal.

At the common law, and in the absence of contract, a trustee was entitled to no compensation for the management of the trust property. He was under no compulsion to accept the trust, and could, if he desired, impose any terms he chose as the condition upon which he would accept, and the person proposing to create the trust had his option to comply or not, as he chose. But having accepted without an agreement for

compensation, the trustee might charge for all reasonable and proper expenses incurred in caring for and preserving the trust property or fund. This being the law, and no contract having been made for compensation, by what rule or for what reason can it be claimed from the *cestuis que trust,* or from each other?

It may be said that the owners having acquiesced in the previous charges of commissions, it may be reasonably inferred that there was an implied understanding that they should receive compensation at the same rate for future services of the same character, and hence they may make such charges. The company, it appears, has not been dissolved, nor does it appear that there has been a final settlement of the affairs of the company; and appellant swears, and he is not contradicted, that the company has never approved these charges for services, but the members thereof were dissatisfied with the charges. From this evidence we could not infer a contract to pay such an amount of commissions. Had the company approved and allowed the charges, then it would be apparent that there was an implied agreement to pay that rate per cent for commissions.

If, then, the company have not sanctioned these charges, and directly or indirectly allowed them, even under an express agreement to divide the commissions equally, appellee would have no right to recover until it shall be ascertained whether appellant has any money in his hands belonging to the company. Until that is ascertained, it can not be known what amount he should pay appellee, even under such an express agreement to divide.

But even if a settlement had been made with the company, and they had approved of and allowed the charges, and no agreement having been made between appellee and appellant as to the division, upon what principle should a division be made? We can see no one more just or equitable than that of a *quantum meruit*. Upon what principle, legal or moral, can one man require another to perform all or the greater part of the

labor, and yet divide the compensation equally? If one devotes two-thirds of the time and labor, and the other but one-third, how can it be said that they shall, in the absence of all agreement, divide the compensation received equally. The charges are made because the time and business skill of the parties are supposed to be valuable, and promotive of the interests of the *cestuis que trust*; and if this be the basis of the charge, how can it be said that appellee has appropriated time and skill which have been expended by appellant? He does not claim that he owns the time, labor or skill of appellant, or that he hired or paid him to appropriate it for the benefit of appellee.

It is, however, said they are joint trustees. Grant it, and how does it change the attitude of the parties? By becoming joint trustees, each, no doubt, became vested with a legal right to perform one-half of the labor with his entire skill, and, on performing one-half of the duties of the trust, as between him and his co-trustee, he would be entitled to one-half of the compensation. But where he performs but one-third of the duties he can surely have no claim to more than one-third of the emoluments, unless conceded by the beneficiary as a gratuity, but he can, in justice, have no claim to the earnings of his co-trustee over and above the sum he has himself earned. Even conceding that it was fully understood that the parties should have compensation, still, appellee has no right to participate in or appropriate the labor or earnings of appellant above and beyond what he performed, or any part of it, to his own use.

It, then, in either view of the case, was error for the court to render the decree for any sum of money whatever against appellant, and the decree must be reversed and the cause remanded.

*Decree reversed.*